IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. COSTELLO, not individually, but as Litigation Trustee under Comdisco Litigation Trust, | ) ) ) | |
| Plaintiff, | ) ) | No. 05 C 726 |
| v. | ) ) | Judge Robert W. Gettleman |
| JULIUS G. HALLER, | ) ) | Reassigned for preliminary purposes with: |
| JOHN A. BLAIR, | ) | 05 C 732 |
| ROMAN BRUNNER, | ) | 05 C 740 |
| BRYANT COLLINS, | ) | 05 C 728 |
| DAVID S. COONS, | ) | 05 C 739 |
| MICHAEL COTHENET, | ) | 05 C 738 |
| CHARLES A. DALE, | ) | 05 C 766 |
| ORRY D. DUBOIS, | ) | 05 C 780 |
| CLAUS DUERR, | ) | 05 C 737 |
| **JAMES D. DUNCAN**, | ) | **05 C 789** |
| HAROLD L. FINKEL, | ) | 05 C 771 |
| THOMAS FLOHR, | ) | 05 C 778 |
| ALLEN J. GRAHAM, | ) | 05 C 735 |
| STEVEN R. GRUNDON, | ) | 05 C 763 |
| OTTO HARDER, | ) | 05 C 774 |
| MARTIN HAUSLER, | ) | 05 C 773 |
| MICHAEL F. HERMAN, | ) | 05 C 731 |
| JOSEPH D. HOLD, | ) | 05 C 782 |
| PETER HUBER, | ) | 05 C 734 |
| JAMES D. JENKS, | ) | 05 C 770 |
| JEFFREY D. KNAUS, | ) | 05 C 772 |
| FREDERIC LOUISY, | ) | 05 C 775 |
| MICHAEL G. MCFARLAND, | ) | 05 C 733 |
| STEPHEN J. MCFARLAND, | ) | 05 C 769 |
| KEITH M. OLENEK, | ) | 05 C 761 |
| **LYSSA K. PAUL**, | ) | **05 C 776** |
| MIKE J. POISELLA, | ) | 05 C 736 |
| THOMAS J. PREDERGAST, | ) | 05 C 727 |
| DEAN J. PROKOS, | ) | 05 C 767 |
| PAUL SANFILLIPPO, | ) | 05 C 729 |
| JEFFREY R. SCHWIERING, | ) | 05 C 781 |
| JOSEPH J. SCOZZAFAVA, | ) | 05 C 746 |
| KEITH TILLEY, | ) | 05 C 745 |
| GREGORY A. WEISS, | ) | 05 C 764 |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In these related cases, plaintiff John W. Costello, Litigation Trustee of the Comdisco

Litigation Trust, has sued defendants seeking to enforce defaulted promissory notes. After

various legal skirmishes including motions to dismiss for lack of personal jurisdiction and motions to strike plaintiff's jury demands, all defendants have finally answered the complaint, raising a plethora of affirmative defenses, and filed a two count counterclaim. Plaintiff has moved for summary judgment against defendants James D. Duncan and Lyssa K. Paul (together, "defendants") on its complaint and the counterclaim. Defendants have filed a cross motion for summary judgment arguing that the notes in questions are unenforceable because they were part of an illegal program. For the reasons discussed below, plaintiff's motion for summary judgment is granted. Defendants' cross motion for summary judgment is denied.[1]

## FACTS

Defendants Paul and Duncan are each former employees of Comdisco, Inc., as are all of the defendants in the related cases. Duncan was Comdisco's Eastern Regional Vice-President, and Paul was In-House Counsel for Comdisco's Legal Department. In early 1998, Comdisco sponsored and implemented a Shared Investment Program ("SIP") for certain senior management level employees, including defendants Duncan and Paul. The SIP gave participating employees ("Participants") the opportunity to invest in the company by purchasing stock ("SIP shares") with a personal loan guaranteed by Comdisco. One hundred percent of the purchase price of the stock was financed by loans from lender banks ("lenders" or "banks") represented by First National Bank of Chicago (now Bank One) as their agent. The loans were guaranteed by Comdisco as evidenced by Master Promissory Note ("Sip note"). Comdisco received the loan proceeds directly from the lenders and held the Sip shares. The guaranty was

---

[1] Plaintiffs have also moved to strike portions of defendants' L.R. 56.1 statements. That motion is denied as moot.

documented in a Facility and Guaranty Agreement ("Facility Agreement") between Comdisco and the lenders. The SIP notes had a fixed maturity date and, at maturity, a final balloon payment of principle and interest was due. Neither the Facility Agreement nor the SIP notes contains any restrictions on the stock, but the Participants did not receive any of the loan proceeds or the SIP shares.

Defendants each received a binder containing materials explaining the SIP program ("SIP materials"). As stated in those materials, the SIP shares were subject to a variety of restrictions on resale for a specified period of time. With certain exceptions not relevant to the instant case, the SIP shares could not be sold during the first year of the SIP program. A Participant was entitled to 100% of the gain after payment of all amounts due on the loan, unless the Participant voluntarily terminated employment or sold the SIP shares within three years after purchase. In either event, the company was entitled to 50% of any gain upon sale.

Both defendants elected to participate in the SIP program. Each signed and returned a Shared Investment Plan Option Exercise Form and a Letter of Direction authorizing the bank to pay the proceeds of the loan to Comdisco. Duncan executed a promissory note dated February 10, 1998, in the principle amount of $1,725,000 (the "Duncan Note"). Paul executed a note dated February 10, 1998, in the principle amount of $552,000 (the "Paul Note"). The proceeds were remitted to Comdisco for purchase of the shares. Comdisco caused 50,000 shares to be allocated and transferred to its Registrar and Transfer Agent, Mellon Investor Services, LLC, for the benefit of Duncan, and 16,000 shares were transferred for the benefit of Paul. The price per share was set as the closing price on January 30, 1998, which was $34.50 per share.

3

Each defendant opened an account at First National Bank of Chicago. The purpose of the account was to receive distribution of stock dividends that were used to offset payments due under the SIP notes. Dividends from the SIP shares were deposited into defendants' accounts.

Within six months of implementing the SIP Program in 1998, Comdisco's stock split, giving defendants double the number of shares they originally received. Just after the second anniversary of the SIP, Comdisco's stock was trading at $53 per share. A number of participants elected to sell SIP shares at that time, generating proceeds sufficient to retire their notes and return a profit, even after the 50% share to Comdisco as required by the restriction on sale prior to the third year anniversary.

By July 2001, Comdisco's fortunes had turned, and it filed for bankruptcy protection, an event of default under the SIP notes causing Bank One as agent for the lenders to accelerate the full amounts due under those notes. The Comdisco Plan of Reorganization authorized the creation of a litigation trust and the appointment of a litigation trustee to, among other things, liquidate trust assets. In December 2004, the Trust Agreement was amended in anticipation of a settlement between Comdisco Holding Company as successor to Comdisco and the lenders, under which Comdisco paid the lenders approximately $126,000,000 to satisfy its guarantee of the SIP notes. The settlement was approved by the bankruptcy court and, as part of the settlement, the lenders assigned all rights associated with the SIP notes against the borrowers to the litigation trustee (plaintiff). Among the notes assigned were the Duncan and Paul notes,

4

leaving plaintiff, as this court has previously held, the holder of the notes with all rights of enforcement. Costello v. Haller, 05 C 726 (N.D. Ill. Sept. 23, 2005) ("Costello I").[2]

## DISCUSSION

Plaintiff has moved for summary judgment, arguing that the undisputed facts demonstrate its right to enforce and on collect the notes. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

There is no dispute as to the facts supporting plaintiff's claims. Defendants admit: they executed their respective SIP notes; they directed that the proceeds of the loans be paid directly to Comdisco; Comdisco received those proceeds; the shares were issued to defendants and held by Mellon on defendants' behalf; and the notes have not been paid. Defendants' argument that plaintiff does not have the right to enforce and collect on the notes has already been rejected by this court in Costello I and again in Costello v. Haller, 05 C 726 at 87 n.2 (N.D. Ill. Sept. 19, 2006) ("Costello II"). Therefore, all elements of plaintiff's claims are undeniably established and, absent a viable affirmative defense or counterclaim, plaintiff is entitled to judgment.

As noted, defendants have raised a plethora of defenses, most of which are based on alleged misconduct by Comdisco. Defendants' primary defense is that the SIP Program was fraudulent. To prevail on this defense, defendants must establish that Comdisco made false statements of material fact, with knowledge or belief of the falsity and an intent to induce

---

[2] A more complete discussion of underlying events and agreements can be found in Costello I.

defendants to act, and that defendants did so act in reliance on the truth of the statements, suffering damage as a result. Brown Leasing Inc. v. Stone, 284 Ill. App. 3d 1035 (1st Dist. 1996).

Defendants argue that the SIP materials contain various misrepresentations. According to defendants the materials indicated that the "SIP shares were not held as security for Comdisco's guarantys [sic] and thus indirectly as security for the loan evidenced by the SIP notes." The materials actually provided:

> Q: Is the loan secured by the stock purchased?
>
> A: No, the loan is not secured by the stock. The loan will be a full recourse obligation of each participant. However, Comdisco holds the actual stock certificates and the sale of the stock is restricted by the terms of the [SIP] such that proceeds first be used to repay the loan obligation. The certificate representing the SIP shares will contain a legend reflecting restrictions on transfer, use of sale proceeds and Comdisco's right of first refusal.

Defendants argue that all of the restrictions on the shares, coupled with the fact that defendants were required to deliver to Comdisco a stock power endorsed in blank, constituted an indirect security interest. Even if defendants are correct (a questionable proposition at best), what they complain about is an expression of legal opinion, which cannot support a claim for fraud. City of Aurora v. Green, 126 Ill. App. 3d 684, 689 (2d Dist. 1984). Defendants make no claim that any of the various restrictions were concealed, or that they were misled into believing that the shares could be pledged as security for other loans. Nor have defendants even attempted to demonstrate that they relied on the alleged misrepresentations in reaching their decision to participate.

Defendants' real argument with respect to the restrictions amounting to an indirect security interest, which they raise both in response to plaintiff's motion for summary judgment

and in their own cross motion for summary judgment, is that Comdisco represented that the loans were not margin loans. The SIP materials provided:

> Q: If the price of Comdisco stock were to drop below the purchase price, would I receive a margin call?
>
> A: No – since the purchased SIP shares do not serve as collateral for the loan from the First National Bank of Chicago, the loan is not a margin loan.

In the Guaranty Agreement, Comdisco represented and warranted that:

> No part of the proceeds of any Loan will be used in a manner which would violate, or result in a violation of Regulation G, Regulation T, Regulation U or Regulation X. Neither the making of any Loan hereunder nor the use of the proceeds thereof will violate or be inconsistent with the provisions of Regulation G, Regulation T, Regulation U or Regulation X.

Again, during the SIP presentation, it was represented that "[T]he loan is not technically secured by the securities because we get into a margin account and this is not a margin account." These representations, according to defendants, raise the inference that "there was at least some question in Comdisco's mind that the SIP notes were functionally, if not `technically,' secured by the SIP shares," yet failed to inform defendants that they might be participating in a transaction that could be interpreted as violating the federal margin requirements. Defendants argue that had they known of the potential legal problem they would not have participated. In the next breath, however, they acknowledge that it was a change in Regulation U in 1999, one year after the SIP program began, that created the problem. Thus, the representations (which are expressions of legal opinion in any event and cannot form the basis of a fraud claim) were accurate when made.

It is true that after the bankruptcy, Comdisco, in an effort to avoid liability under the guaranty, took the position that the SIP program documents were illegal and unenforceable

7

contracts because the entire agreement violated the federal margin regulations (Regulation U). A large group of SIP participants, including defendants, intervened and sought a declaration that the loans were unenforceable because they violated 12 C.F.R. § 221 (Regulation U), which was promulgated under § 70 of the Security Exchange Act of 1934, 15 U.S.C. § 78g(d). This is the same legal argument that defendants assert in the instant case, both in response to plaintiff's motion for summary judgment and as a cross motion for summary judgment. The bankruptcy court held that neither Comdisco nor the SIP participants had standing to challenge the legality of the loan.

Both Comdisco and the intervening SIP participants appealed, but Judge Bucklo affirmed, relying on Bassler v. Central National Bank, 715 F.2d 308 (7th Cir. 1983), which specifically held that there is no private right of action under § 7(d) or 29(b) of the Security Exchange Act. Blair v. Bank One, N.A., 307 B.R. 906 (N.D. Ill. 2004). Judge Bucklo specifically rejected as one of semantics the argument that Bassler did not control because Comdisco and the SIP participants were asserting the illegality of the loans as an affirmative defense rather than as a separate cause of action. Id. At 909-910. This court agrees with Judge Bucklo's reasoning in Blair, and rejects defendants' argument that the loans cannot be enforced as illegal under Regulation U. Accordingly, that affirmative defense is rejected and defendants' cross motion for summary judgment is denied.

Defendants also argue that Comdisco misrepresented the value of the SIP shares. As noted, the price for the shares was based on the market closing price on January 30, 1998. That price was accurately set as reported. Defendants argue that the restrictions placed upon the SIP shares rendered them less valuable than the $34.50 per share January 30, 1998 closing price.

8

The effect of the restrictions is, of course, a matter of opinion, not fact, and the existence of the restrictions were fully disclosed. More importantly, the SIP shares price per share was specifically set at the market price, not some other "value" that accounted for the restrictions on the SIP shares. Consequently, there was no misrepresentation that could support a claim for fraud.

Finally, with respect to their fraud defense, defendants argue that they were defrauded by various statements made by Comdisco's interim CEO Phil Hewes. Specifically, defendant Paul claims that in early 2001 Hewes told her that "the company was on track and was going to take care of their employees and not leave us hanging," and that "they wouldn't leave us, that would take care of us and not to worry." Duncan also claims that Hewes told him that Comdisco had historically protected its employees from financial harm, that preventative measures in relation to the SIP program were under consideration, and that sale of the SIP shares was not a good idea. Duncan and Paul both argue that they relied on these representations in not taking action to "extricate themselves from the SIP program."

Even if these statements were made, plaintiff is correct that they do not rise to the level of actionable misrepresentations or fraud. They are statements of Hewe's belief of what would happen in the future and as such were mere opinions. See Marino v. United Bank of Illinois, 137 Ill. App. 3d 523 (2d Dist. 1985); Sciarabba v. Chrysler Corp., 173 Ill. App. 3d 57, 63 (1st Dist. 1988). Additionally, there is no evidence that the statements were false, and that Hewes knew or believed them to be false when they were made. Marino, 137 Ill. App. 3d at 527. Any reliance on such statements by Hewes would be unjustified in any event because any modification of a credit agreement must be in writing under the Illinois Credit Agreement Act. 815 ILCS 160/01

9

et seq. Accordingly, the court concludes that the undisputed facts demonstrate that defendants' fraudulent misrepresentation defense lacks merit and cannot defeat plaintiff's motion for summary judgment.

Defendants also raise negligent misrepresentation as an affirmative defense, claiming that Comdisco and the bank negligently misrepresented the SIP program. The elements of a negligent misrepresentation claim are: (1) a duty owed to communicate accurate information; (2) a breach of that duty; and (3) injury resulting from the breach. Id. at 528. The action is available only against one who is in the business of supplying information for the guidance of others in their business transactions. Id. Because nothing in the record supports the claim that either Comdisco or the bank was so engaged, the defense fails.

Defendants also assert that Comdisco breached a fiduciary duty owed to them. This duty arises, according to defendants, from the structure of the SIP program coupled with the circumstances under which employees were induced to participate. None of the cases relied on by defendants suggest, however, that those facts could support the existence of a fiduciary duty. For example, in Martin v. Heinhold Commodities, Inc., 117 Ill.2d 67 (1987), the court held that a fiduciary relationship could be established between a broker and its customers. Again, in Mann v. Kemper Financial Companies, Inc., 247 Ill. App. 3d 966, 980 (1st Dist. 1992), a fiduciary relationship was established between investors and their financial advisors.

No such relationship of trust between Comdisco and defendants, who were high-level employees, is suggested by the facts in the instant case. Moreover, the record demonstrates that the terms, conditions and risks of the SIP program were fully disclosed to defendants,

particularly the personal recourse nature of the loans. There is simply nothing in the record to support the defendants' theory that Comdisco owed or breached a fiduciary duty to defendants.

Defendants have also raised duress as an affirmative defense, arguing that they were forced to participate or lose their jobs. This argument lacks any factual support or legal merit. First, neither defendant Paul nor Duncan (or any other defendant in the related cases) has actually testified that Comdisco threatened his or her continued employment if they refused to participate or sold their SIP shares. Rather, certain defendants have testified that they felt that they would not be viewed as team players, or that their commitment to the company would be questioned if they declined to participate. This testimony is insufficient to establish that defendants were deprived of their own free will when entering the agreement.

Economic duress is a condition where one is induced to make a contract by a wrongful act or threat of an another under circumstances that deprive one of the exercise of one's free will. Hurd v. Wildman, Harrold, Allen & Dixon, 303 Ill. App. 3d 84, 91 (1st Dist. 1999). To establish duress, defendants must demonstrate that the threat left them "bereft of the quality of mind essential to the making of a contract." Id. The acts or threats complained of must be wrongful in either the legal or moral sense, but "the defense cannot be predicated upon a demand that is lawful or upon doing or threatening to that which a party has a legal right to do." Id.

In the instant case, defendants were all at will employees. Thus, even if defendants had evidence of an actual threat to their continued employment (which they do not), any such threat would be lawful. LaScola v. U.S. Sprint Comm., 946 F.2d 559, 564-65 (7th Cir. 1991). This court has already rejected defendants' argument that because they had only a weekend to reach their decisions they were subjected to undue pressure or duress. Each defendant had over ten

11

days after the weekend presentation in which to review the proposed promissory notes. There is nothing in the record to support the notion that such high level employees as these defendants, the Regional Vice-President and In-House Counsel, signed promissory notes indebiting themselves for over $1 million and $500,000 respectively without giving it any thought. The fact that they may have felt pressured to sign was all the more reason to say no. If they had any concerns about the notes or the plan they could have and should have simply refused to participate. The court concludes that the uncontested fact defeat defendants' claim of duress, and the affirmative defense is rejected.

Next, defendants raise accord and satisfaction, arguing that the settlement of the guaranty between Comdisco and the lenders either discharged in full or gave Comdisco as assignee the right to recover only the difference between the amounts due on the notes and the amount of the settlement. An accord and satisfaction is an agreement between the parties that settles a bona fide dispute over an unliquidated claim. Emrick v. First Nat'l Bank of Jonesboro, 324 Ill. App. 3d 1109, 1116 (5th Dist. 2001). The elements are: (1) an honest dispute between the parties as to the amounts due at the time payment was tendered; (2) a tender of payment with the explicit understanding of both parties that it is in full payment of all demands; and (3) an acceptance by the creditor with the understanding that the tender is accepted as full payment. Id.

Defendants have not identified any evidence in the record to suggest that Comdisco or the lenders agreed to compromise or settle the SIP notes, or that the lender's acceptance of the tender of payment was in full payment of those notes. To the contrary, the evidence quite clearly demonstrates an intent to preserve all rights to pursue defendants for payments under the notes.

Defendants next argue that there was a lack of consideration for the SIP notes because the proceeds went directly to Comdisco and defendants never received the stock certificates. Of course, the proceeds went to Comdisco pursuant to defendants' letters of direction, and the SIP shares were held by Mellon for defendants' benefit. The fact that there were restrictions on the shares does not create a lack of consideration.

Nor is there anything in the record to support defendants' assertion that they are entitled to a set-off based on Comdisco's alleged breach of a warranty. Nothing in the SIP notes or materials contains any expression of a warranty.

Defendants also argue that plaintiff has failed to allege damages because it paid no separate consideration for the notes. Plaintiff holds the notes as assignee of the lenders. There was sufficient consideration for the notes when they were made, and as assignee, plaintiff is entitled to enforce the notes according to their terms. Klehm v. Grecian Chalet, Ltd., 164 Ill. App. 3d 610, 618 (1st Dist. 1988). Moreover, this court has already held that plaintiff has the right to enforce the notes in full. Costello I. Similarly, defendants' defenses of unclean hands, waiver, and laches are all equitable in nature and have no application in this action for money damages. See Jones v. Sabis Education Systems, Inc., 2000 WL 369720 at *3 (N.D. Ill. 2000).

Defendants' final defense, that judicial estoppel prevents enforcement of the notes based on Comdisco's position in the bankruptcy court, is wholly without merit given that Comdisco lost in that litigation. "Judicial estoppel generally prevents a party from prevailing in one phase of the case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 121 S.Ct. 1808, 1814 (2001). The party to be estopped "must have convinced the first court to adopt its position; a litigant is not forever bound to a

13

losing argument." Levinson v. United States, 969 F.2d 260, 264-65 (7th Cir. 1992). Accordingly, a judicial estoppel defense is unavailable to defendants.

In their counterclaim, defendants allege that Comdisco was somehow unjustly enriched by the SIP program at the expense of the SIP participants. The argument is based on the wholly unsupported contention that Comdisco received the proceeds of the SIP financing in the form of an "off balance sheet loan." The theory of unjust enrichment is based on an implied contract, however, and it has no application where, as here, a specific contract covers the relationship between the parties. Stathis v. Geldermann, Inc., 295 Ill. App. 3d 844, 864 (1st Dist. 1998).

Defendants' final argument is that Comdisco breached the contract with them by attempting to collect the full amounts of the notes rather than simply collecting reimbursement of any amounts it paid to the bank in settlement of the guaranty. Nothing in the SIP documents, however, limits defendants' liability under the notes, and the court has already held that as assignee plaintiff has full right to enforce the notes. Additionally, to the extent that this argument is based on defendants' theory that plaintiff can proceed on a subrogation theory only, it has been expressly rejected by the court in Costello I.

## **CONCLUSION**

For the reasons set forth above, plaintiff's motion for summary judgment is granted. Defendants' cross motion for summary judgment is denied. Plaintiff is directed to prepare a final judgment order as to these defendants and present it to the court on January 4, 2008, at 9:00 a.m.

**ENTER:** December 21, 2007

*Robert W. Gettleman*

                                             _____
                                             **Robert W. Gettleman**
                                             **United States District Judge**